# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**LARRY WAYNE JONES**  **PLAINTIFF**
**ADC #70147**

**V.**            **NO. 4:21-cv-00149-JM-ERE**

**AKEISHA WALKER,** *et al*.            **DEFENDANTS**

## RECOMMENDED DISPOSITION

**I.    Procedure for Filing Objections:**

This Recommendation has been sent to United States District Judge James M. Moody, Jr. You may file objections if you disagree with the findings or conclusions set out in the Recommendation. Objections should be specific and include the factual or legal basis for the objection.

Objections must be filed within fourteen days. If you do not object, you risk waiving the right to appeal questions of fact, and Judge Moody can adopt this Recommendation without independently reviewing the record.

**II.    Background:**

Larry Wayne Jones, an inmate at the Maximum-Security Unit ("MSU") of the Arkansas Division of Correction ("ADC"), filed this lawsuit *pro se* under 42 U.S.C. § 1983. *Docs. 2.* Mr. Jones' remaining claims are as follows: (1) between February 27, 2019 and May 30, 2019, MSU Food Production Manager ("FPM") Akeisha Walker and Former MSU Warden Andrea Culclager were deliberately indifferent to

his health, and violated the Americans with Disabilities Act ("ADA") and the Rehabilitation Act by not allowing meals to be delivered to his cell; (2) Nurse Carla Jacks was deliberately indifferent to his medical needs during their interaction on March 22, 2019; and (3) Nurse Erica Johnson was deliberately indifferent to his medical needs during their interaction on May 6, 2019 and May 22, 2019.[1]

Pending before the Court are Defendants' motions for summary judgment. *Docs. 86-91*. Mr. Jones has not responded to Defendants' motions, and the time do so has passed.[2] Both summary judgment motions are now ripe for review.

For the following reasons, the undersigned recommends that Defendants' motions for summary judgment be granted.

### III. **Summary Judgment Standard:**

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986);

---

[1] The Court previously dismissed Mr. Jones' claims against Health Services Administrator ("HSA") William Benton for failure of service. *Doc. 43*. The Court also previously dismissed Mr. Jones' other claims against Nurse Jacks, Nurse Johnson, and WellPath for failure to exhaust administrative remedies. *Doc. 79*.

[2] The Court previously provided Mr. Jones two extensions of time to respond to Defendants' motions for summary Judgment. *Docs. 94, 99*. However, the Court denied Mr. Jones' motions for additional time to respond to Defendants' motion based on his requests to serve additional discovery requests on Defendants. *Docs. 84, 92, 107*.

*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must come forward with specific facts demonstrating that there is a material dispute for trial. See FED. R. CIV. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). A party is entitled to summary judgment if -- but only if -- the evidence shows that there is no genuine dispute about any fact important to the outcome of the case. See FED. R. CIV. P. 56; *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017).

**IV.   Discussion:**

    **A.   Undisputed Material Facts**

In early 2019, Mr. Jones suffered from osteoarthritis in his hip making it harder for him to walk. *Docs. 87-2 at 12*. On February 27, 2019, Mr. Jones sent FPM Walker an informal request asking for meals to be delivered to his cell, so he did not have to walk to the cafeteria. *Id. at 59*. On March 10, 2019, Mr. Jones sent Warden Culclager an informal request about the same issue. *Id at 67*. When neither FPM Walker nor Warden Culclager responded, Mr. Jones filed grievances against them.[3] *Id. at 66-67*. FPM Walker responded to the grievance and told Mr. Jones that he

---

[3] FPM Walker and Warden Culclager do not recall receiving the informal requests from Mr. Jones. *Docs. 89-2*. However, whether they received the informal requests is not material in ruling on the pending motions for summary judgment.

needed to get a prescription from medical services in order for his meals to be delivered to his cell. *Id. at 65, 73-74.*

On March 21, 2019, Mr. Jones submitted a written request to visit the infirmary regarding the meal-delivery prescription. *Docs. 87-2 at 32*. When Mr. Jones visited the infirmary the next day, Nurse Jacks told him that that she did not have the authority to write his prescription, but she would call someone for permission later in the day, since the people with authority were out of the office. *Id. 33*. Mr. Jones never heard back from Nurse Jacks, and he never followed-up with her. *Id. at 35-36.*

On May 6, 2019, ADC staff transported Mr. Jones to the infirmary in a wheelchair for a chronic-care visit. *Id. at 37.* During the visit, Mr. Jones overheard Nurse Johnson tell another nurse they could not "write him that script" to eat meals in his cell. *Id. at 38.* The other nurse, who is not a party in this case, provided Mr. Jones with a walker and steroids. *Id. at 38-39*.

On May 22, 2019, ADC staff transported Mr. Jones to the infirmary in a wheelchair to have laboratory tests performed in preparation for his May 30 hip surgery. *Id. at 38*. Because Mr. Jones was having trouble ambulating, Nurse Johnson admitted him to the infirmary, where he would be delivered meals daily. *Id. at 48.* After several hours, and eating two meals, Mr. Jones, against medical advice,

demanded to go back to his cell because he had no one to talk to and was bored. *Id. at 50-51.* As a result, Nurse Johnson released Mr. Jones back to his regular cell.

From April 6 to May 30, 2019, Mr. Jones stopped going to the cafeteria, and, instead, had people sneak food to him in his cell. *Id. at 75.*

### B.   Medical Deliberate Indifference Claim

Deliberate indifference to a prisoner's serious medical needs constitutes the unnecessary and wanton infliction of pain and violates the Constitution. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (omitting quotations and citation). Mr. Jones "must clear a substantial evidentiary threshold" to show that Defendants acted with deliberate indifference. *Johnson v. Leonard*, 929 F.3d 569, 576 (8th Cir. 2019). An inadvertent or negligent failure to provide adequate medical care does not amount to deliberate indifference. *Id. at 575*. Instead, deliberate indifference requires culpability akin to criminal recklessness, which is more blameworthy than negligence but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

To demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Thompson v. King*, 730 F.3d 742, 746–47 (8th Cir. 2013). An inadvertent or

negligent failure to provide adequate medical care does not amount to deliberate indifference. Negligence, even gross negligence, is not deemed "an unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105. A defendant is liable only if their actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany*, 132 F.3d at 1240-1241 (citing *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)).

In addition, disagreement with treatment decisions cannot support a deliberate indifference claim. *Barr v. Pearson*, 909 F.3d 919, 921-22 (8th Cir. 2018). An inmate has no right to a particular or requested course of treatment, and a mere difference of opinion over matters of expert medical judgment or the course of treatment does not amount to a constitutional violation. *Dulany v. Carnahan*, 132 F.3d 1234, 1239-40 (8th Cir. 1997).

It is undisputed that Nurse Jacks did not give Mr. Jones the requested meal-delivery prescription when he visited the infirmary on March 22, 2019, because she did not have the authority to write such a prescription. Notably, during his deposition, Mr. Jones conceded that Nurse Jacks lacked the authority to issue a meal-delivery prescription. *Doc. 87-2 at 34*. In addition, Mr. Jones admitted that he did not file an additional sick-call request for a prescription; nor did he attempt to follow-up with Nurse Jacks. *Id. at 35*. Based on this single interaction between Mr. Jones

and Nurse Jacks, no reasonable juror could conclude that Nurse Jacks acted with deliberate indifference to Mr. Jones' medical needs. *Id. at 37.*

Mr. Jones complains that Nurse Johnson told him that the ADC medical staff could not provide him a meal-delivery prescription. Yet, in his deposition, he also admitted that Nurse Johnson, like Nurse Jacks, lacked the authority to issue any such prescription. *Id. at 34*. Nurse Johnson's only other contact with Mr. Jones was admitting him to the infirmary where he would be delivered meals daily. *Id. at 8*. However, Mr. Jones refused Nurse Johnson's treatment plan and returned to his cell, knowing that he would no longer receive delivered meals.[4]

Even if both nurses had the authority to issue the meal-delivery prescription, their failure to do so during the limited encounters that Mr. Jones had with them could not support a finding of deliberate indifference. Again, Mr. Jones' disagreement with treatment cannot support a finding of deliberate indifference.

Mr. Jones' only claims against FPM Walker and Warden Culclager are based on their alleged failure to respond to his informal requests to eat in his cell. However, Mr. Jones testified that, after he filed a grievance, FPM Walker advised him to get a prescription, which he half-heartedly attempted to do, based on his interactions with

---

[4] Notably, in a March 27, 2019 grievance, Mr. Jones fails to say anything about missing meals or his trouble walking. Instead, he complains that his meals were bland. *Doc. 57-2 at 5.* In an April 6, 2019 appeal of that grievance, Mr. Jones also fails to mention his inability to walk to the chow hall. *Id. at 4.*

7

Nurse Jacks. Furthermore, FPM Walker and Warden Culclager, neither of whom are medical providers, were entitled to rely on medical staff to decide whether Mr. Jones needed a meal-delivery prescription. See *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042-43 (8th Cir. 2006) (explaining that prison supervisors, who lack medical expertise, may rely on the treatment decisions made by medically treated personnel).

Based on the undisputed facts, no reasonable juror could find in Mr. Jones' favor on his constitutional claims against any remaining Defendant. Accordingly, Defendants are entitled to judgment as a matter of law on Mr. Jones' medical deliberate indifference claims against them.

### C. ADA and Rehabilitation Act Claims

Defendants also are entitled to summary judgment on Mr. Jones' claims under the ADA and the Rehabilitation Act. First, Mr. Jones is not disabled as defined by either the ADA or the Rehabilitation Act. "Disability under the ADA requires permanent or long-term impairments . . . ." *Gutridge v. Clure*, 153 F.3d 898, 901-902 (8th Cir. 1998); *Heintzelman v. Runyon*, 120 F.3d 143, 145 (8th Cir.1997) (noting that a condition must be permanent or produce long-term limitations for the individual to constitute an actual disability under the Rehabilitation Act). Mr. Jones

had a temporary hip impairment that was successfully resolved[5] with surgery on May 30, 2019. *Doc. 87-2 at 25.*

Second, even if Mr. Jones could be considered disabled under the ADA or the Rehabilitation Act, he is not entitled to the accommodation of his choice. *Minnihan v. Mediacom Communications Corp.*, 779 F.3d 803, 814 (8th Cir. 2015) ("[A] disabled individual is not entitled to an accommodation of his choice.") (citation omitted). Mr. Jones has a constitutional right to meals, but not at his preferred location. It is undisputed that Defendants provided Mr. Jones steroids and a walker, then admitted him to the infirmary so that meals would be delivered three times a day. However, Mr. Jones missed socializing. His decision to forgo meals so that he could socialize was a problem of his own making, not discrimination by Defendants.

## V.  Conclusion:

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' motions for summary judgment (*Docs. 86, 89*) be GRANTED, and Mr. Jones' claims be dismissed, with prejudice.

2. Judgment be entered for Defendants.

---

[5] Mr. Jones testified that he considered the surgery successful; he could walk and perform activities of daily living without a cane; and he was able to walk to the cafeteria. *Doc. 87-2 at 28.*

9

3. The Clerk of the Court be directed to close this case.

Dated this 21st day of February, 2023.

_____
UNITED STATES MAGISTRATE JUDGE